UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In Re: | § | |
| ALONZO RAMIREZ, *et al*, | § | |
| | § | |
|     Appellants, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-128 |
| | § | |
| LARRY WILSON, | § | |
| | § | |
|     Appellee. | § | |

## **OPINION AND ORDER**

    This is an appeal from the United States Bankruptcy Court for the Southern District of Texas with respect to a claim brought by Larry Wilson (Wilson), a creditor, against Alonzo and Mary Ramirez (Debtors) for fraud and deceptive trade practices in connection with the sale of a residence. The Bankruptcy Court found in favor of the creditor, liquidated the claim, ordered that the claim was not dischargeable in bankruptcy, awarded damages including attorney's fees and expenses, denied exemplary damages, and imposed a constructive trust on a parcel of real estate and an annuity that the Debtors purchased with the proceeds of the sale to Wilson.

    In two issues, the Debtors appeal the judgment, complaining of error in a partial summary judgment and in an award of allegedly excessive attorney's fees. The Court finds that oral argument would not provide any necessary benefit and the request for argument is DENIED. For the reasons set out below, the Bankruptcy Court's judgment is AFFIRMED.

## MOTIONS TO STRIKE

As a preliminary matter, Wilson has filed Motions to Strike Exhibits (D.E. 14 and 18) seeking to strike exhibits that the Debtors have offered for the first time in this appeal. Each of the Exhibits (D.E. 13, 15, 16-1, and 16-2) purports to be a full or partial copy of the "One to Four Family Residential Contract (Resale)" (Contract) between the parties. This part of the contractual transaction was never offered as evidence during the Bankruptcy Court proceedings and therefore may not be considered by this Court. FED. R. BANKR. P. 8006; *In re CPDC, Inc.*, 337 F.3d 436, 443 (5th Cir. 2003).

Nonetheless, Debtors assert that this Court may take judicial notice of the Contract as an "exemplar" and argue that it is an indispensable part of an action on the contract. D.E. 17. Nothing in Debtors' briefing supports their effort to expand the record. The Contract is not necessary to the fraud and deceptive trade practices act liability theories upon which judgment was rendered below, the Bankruptcy Court did not consider it, and Debtors have failed to provide any reason for their failure to offer it into the record during the summary judgment or trial proceedings in the Bankruptcy Court. The Court GRANTS the Motions to Strike (D.E. 14, 18) and STRIKES D.E. 13, 15, 16-1, and 16-2.

## PROCEEDINGS BELOW[1]

In 2006, Wilson agreed to purchase the Debtors' residence at 13538 Peseta Court, Corpus Christi, Texas (Peseta House). As part of the transaction, Mary Ramirez filled out and signed a "Seller's Disclosure Notice" (Condition Disclosure), representing that

---

[1] The Court recounts here enough of the proceedings to provide context for the appeal. For more detailed findings of fact and conclusions of law, see the Memorandum Opinion and Order on Larry Wilson's Motion for Partial Summary Judgment, D.E. 3-16, pp. 1-15.

there had been no prior water penetration of the Peseta house, no previous repairs to the roof or to remediate environmental hazards, no room additions or alterations without proper permits, and there were no conditions materially affecting the health or safety of an occupant of the property.  D.E. 3-5.  These representations were not true, as there had been at least two insurance claims for water damage, with documented roof leaks, wood rot, and mold, none of which had been fully remediated with the insurance proceeds.  D.E. 3-6, 3-7, 3-8, 3-9, 3-10.

While Wilson had hired his own inspector, the evidence showed that the Debtors had made cosmetic repairs to conceal the damage and made additional misrepresentations to the inspector so as to prevent a more detailed inspection.  D.E. 3-4.  In reliance upon the Debtors' false representations (uncontroverted by the inspection), Wilson purchased the property.  D.E. 3-4.  The Debtors used the proceeds of the sale to pay off the balance owed to Mr. Gauldin (who was selling the residence to Debtors on a contract for deed) and to purchase (1) a new residence at 3900 Arroyo Del Sol, Shertz, Texas (Arroyo House) and (2) a MetLife Annuity.  D.E. 3-17, p. 48, para. 5.

Upon taking possession of the Peseta House, Wilson discovered that there was evidence of prior water penetration and unremediated moisture damage.  He incurred substantial expense for repairs and filed a lawsuit in state court against Debtors and others for his damages.  Debtors filed for relief under Chapter 7 of the United States Bankruptcy Code "to put an end" to Wilson's efforts.  D.E. 3-4, p. 1.  Wilson then filed an adversary proceeding in Debtors' bankruptcy case for the purpose of liquidating his claim, imposing a constructive trust on the assets that Debtors purchased with the

proceeds of the transaction, and to prevent his claim from being discharged in bankruptcy. D.E. 3-18, pp. 1-15.

In that adversary proceeding, Wilson filed a Motion for Partial Summary Judgment. D.E. 3-4, pp. 10-32. With voluminous exhibits, Wilson sought summary judgment (1) that Debtors engaged in knowing and intentional violations of the Texas Deceptive Trade Practices Act (DTPA), (2) liquidating actual compensatory damages of not less than $260,468.88, and (3) establishing entitlement to reasonable and necessary attorney's fees as a prevailing party. Reserved for trial were the issues of additional or exemplary damages, the amount of the attorney's fees and expenses, and whether a constructive trust could be imposed on the Arroyo House and the MetLife Annuity. D.E. 3-4, pp. 12.

Evidence included Wilson's affidavit detailing the transaction, his initial ignorance of the property's condition, that the Debtors had told him that there had been no prior water damage, and detailing the revelations gained by discovery, including Debtors' prior involvement in insurance claims for water damage to the Peseta House. Wilson Affidavit, D.E. 3-4, pp. 36-62, Debtors' Condition Disclosures, D.E. 3-5, State Farm Insurance Claim Files, D.E. 3-6, 3-7, 3-8, 3-9, 3-10 (photos). Wilson attached copies of Mary Ramirez' statement to the insurance company that paid on the water damage claim during her occupancy of the premises, as well as her deposition testimony. D.E. 3-11, pp. 4-11, 3-12, pp. 3-107. He also offered deposition testimony to show that no repairs were ever made other than cosmetic efforts to disguise the damage, and that Mary Ramirez had offered false testimony during the course of the case that the water damage had been

repaired. Deposition of Mickey Garza, D.E. 3-12, pp. 119-66.

Wilson argued that the same evidence and a DTPA finding supported a finding of fraud and nondischargeability under 11 U.S.C. § 523(a)(2)(A). In particular, he sought judgment that Debtors, in bad faith, intentionally and knowingly made false representations with the purpose of deceiving Wilson and upon which Wilson relied to his detriment. D.E. 3-4, pp. 27-28.

In response to this motion for summary judgment, Debtors filed a verified Answer, containing a denial of the allegations; background regarding Wilson's state court litigation against them, their realtor, and Wilson's inspector (along with others); a suggestion that Wilson was simply experiencing buyer's remorse after the housing market "bubble bust" and was unfairly targeting them as a scapegoat; denying that there were any active water leaks at the time of the sale; and arguing that nothing in the evidence amounted to fraud. D.E. 3-19, pp. 1-3. Debtors did not submit any summary judgment evidence in opposition to Wilson's motion. Neither did they object to any of Wilson's evidence.

As a result, the Bankruptcy Court entered summary judgment in favor of Wilson as requested. D.E. 3-16, pp. 1-15. Upon trial of the remaining issues, Mary Ramirez filed a proffer of testimony seeking sympathy, denying any misrepresentations in the most conclusory of terms, complaining of Wilson's harassment and his attorney's tactics, blaming Wilson's inspector for not discovering the damage, claiming that they had been told that the mold was not hazardous, and suggesting that Wilson was simply greedy. D.E. 3-17, pp. 1-2. The Bankruptcy Court declined to award additional or exemplary

damages and liquidated the attorney's fees and expenses. D.E. 3-17, pp. 47-49. Last, the Bankruptcy Court imposed a constructive trust on the Arroyo House and MetLife annuity, which Debtors admitted that they had purchased with the proceeds of the sale of the Peseta House to Wilson. D.E. 3-17, p. 48, para. 5. Debtors appeal the partial summary judgment on liability and the amount of the attorney's fees awarded. D.E. 6.

## DISCUSSION

This Court, sitting as an appellate court reviewing the Bankruptcy Court's decisions, applies a *de novo* standard of review to conclusions of law and a clearly erroneous standard of review to findings of fact. *Rolling Plains Prod. Credit Ass'n v. Cook (In re Cook)*, 169 F.3d 271, 274 (5th Cir. 1999); *Webb v. Reserve Life Ins. Co. (In re Webb)*, 954 F.2d 1102, 1104 (5th Cir. 1992). When a summary judgment movant has submitted evidence to sustain his initial burden of proof, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence should be viewed as favoring the non-movant's position in the dispute or, at the very least, how that evidence creates a disputed issue of material fact. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). Suggesting that the movant's evidence raises metaphysical doubt is insufficient to defeat a summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L. Ed.2d 538 (1986).

### A. Issue One: Whether the Summary Judgment Was Proper

In the first of their two issues, Debtors claim that the evidence did not support the summary judgment. They list six arguments under this issue: (1) the evidence and permissible inferences, which must be made in favor of Debtors, fail to support the

judgment of a violation of the DTPA or at least reveal disputed issues of material fact; (2) Wilson's evidence was not admissible or in admissible form; (3) Wilson failed to offer the entire Contract for the sale of the Peseta House; (4) none of the evidence supports any judgment against Alonzo Ramirez; (5) the evidence is insufficient to support an objection to dischargeability and a constructive trust; and (6) the judgment allows a double recovery.

### 1. Whether the Evidence Supports the DTPA Finding

In their global challenge to the sufficiency of the evidence to support the DTPA violations, Debtors rely on the requirement of FED. R. CIV. P. 56 and FED. R. BANKR. P. 7056 that inferences be resolved in favor of the Debtors as non-movants because the testimony relied upon was ambiguous or incorrect. In particular, they suggest that Wilson's own evidence, which included Mary Ramirez acknowledging knowledge of water leakage by the time she was deposed in 2012 (D.E. 3-12, pp. 32-34, 47), should not be taken to support a finding that she knew of those facts at the time of the sale in 2006. D.E. 6, pp. 8-9.

This argument fails because, at the time that the walls were removed to expose water damage for insurance claim purposes well before the sale to Wilson, Mary Ramirez acknowledged sleeping in the house because the insurance adjuster had assured her that the mold she saw did not pose a health hazard. D.E. 3-12, pp. 47-49. She acknowledged replacing sliding glass doors because of the water damage. D.E. 3-12, p. 50. Additionally, there is independent evidence of Mary Ramirez's knowledge at the time of the sale in the insurance claim file. D.E. 3-6, 3-7, 3-8, 3-9, 3-10, 3-11.

Wilson demonstrated that Debtors lived in the house since at least 1996, Mary Ramirez cooperated with insurance adjusters in identifying and evaluating the damage, and there was leakage and wood rot in 2002. Depo. of Mary Ramirez, D.E. 3-12, p. 29, 40. When asked at her deposition if she had any evidence to dispute Wilson's evidence that he had asked about prior water damage and that she had denied there was any, Mary Ramirez responded that she did not recall, did not know, or did not think so. D.E. 3-12, pp. 30-38. Nothing about the Bankruptcy Court's consideration and use of this evidence was contrary to Wilson's summary judgment burden or the resolution of inferences and ambiguities in favor of the Debtors.

Debtors contend that Wilson examined the house during periods of rain (Depo. of Mary Ramirez, D.E. 3-12, pp. 30-31), suggesting that if there were leaks, they would have been patent at the time of his viewing. D.E. 6, p. 9. Debtors did not offer any evidence that there were, in fact, leaks or damage apparent to Wilson at the time of his visits. Nothing in this assertion supports an inference that Wilson had actual knowledge of water leaks or damage. "Although all justifiable inference must be drawn in favor of the non-movant, . . . the non-movant still cannot defeat summary judgment with speculation, improbable inferences, or unsubstantiated assertions." *Likens v. Hartford Life and Acc. Ins. Co.*, 688 F.3d 197, 202 (5th Cir. 2012) (citations omitted).

Debtors also rely on testimony that they claim controverts Wilson's assertions in that Mary Ramirez testified (D.E. 3-12, pp. 16-20) that a small leak and small amount of mold had been completely repaired. D.E. 6, p. 9. She further testified that at the time of the sale, nothing was wrong with the house. D.E. 3-12, p. 22-23. This does not

controvert—and in fact confirms—Wilson's assertion that Debtors made misrepresentations denying that there had been previous damage and repairs. The repairs were admittedly performed in 2002, before the Condition Disclosure and sale to Wilson. D.E. 3-12, pp. 65-66. The evidence offered supports the Bankruptcy Court's holding and does not reveal a disputed issue of material fact to preclude judgment.

### 2. Admissibility of the Evidence

On appeal, Debtors complain of the admissibility of four types of evidence. The exact exhibit and page references are not supplied, but from their briefing it appears that they challenge: (1) the allegedly flawed methodology of the real estate appraisal of Terry Wood (Ex. 6, D.E. 3-14, pp. 4-25, D.E. 3-15, pp. 4-27); (2) the Krismer opinion (Ex. 4, D.E. 3-13, pp. 3-50) as not being based on any personal knowledge that the mold was known to Debtors; (3) the Thomas estimate (Ex. 5, D.E. 3-13, pp. 51-93) as it addresses only a portion of the home and supports damages far less than awarded by the Bankruptcy Court; and (4) the Affidavit of Wilson (D.E. 3-4, pp. 36-62), in that it allegedly contains matters that were not within his personal knowledge, involve expert testimony that he does not have the qualification to render, discusses repairs made without testifying that they were reasonable and necessary, is based on hearsay of third parties, and does not demonstrate any expert knowledge or qualification for repair estimates. D.E. 6, pp. 9-10.

Nothing in Debtors' Answer (D.E. 3-19, pp. 1-3) contains any objection to any of Wilson's summary judgment evidence. Debtors have pointed to nothing in the record to show that they raised these objections in the Bankruptcy Court or that the Bankruptcy

Court made erroneous rulings or refused to rule.

> As a general rule, appellate courts refuse to consider an issue raised for the first time on appeal. *Adams v. Askew*, 511 F.2d 700, 705 (5th Cir. 1975); *Commercial Credit Business Loans, Inc. v. St. Louis Terminal Field Warehouse Co.*, 514 F.2d 75, 77 (5th Cir. 1975). However, an exception is sometimes made in one of the following three instances: (1) when the issue raises a pure question of law and refusal to consider it results in a miscarriage of justice, *Guerra v. Manchester Terminal Corp.*, 498 F.2d 641, 658 n.47 (5th Cir. 1974); *American Surety Co. of New York v. Coblentz*, 381 F.2d 185, 189 n.5 (5th Cir. 1967); (2) where the interest of substantial justice is at stake, *Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1324 (5th Cir. 1976); *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 286 (5th Cir. 1975); and (3) when there is no opportunity to object to an order at the time of its issuance. FED.R.CIV.P. 46.

*Matter of Novack*, 639 F.2d 1274, 1276-77 (5th Cir. 1981).

Debtors have failed to show that any of the exceptions to the rule apply. Admissibility of evidence is generally a matter of discretion and none of Debtors' objections state a pure question of law. *E.g.*, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 1176, 143 L.Ed.2d 238, 252 (1999) (trial judge has wide discretion to determine admissibility of expert opinion); *Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1432 (5th Cir. 1989) (trial courts may defer to the expert's opinion of what data they find reasonably reliable); *In re Homeowners Mortgage and Equity, Inc.*, 354 F.3d 372, 376 (5th Cir. 2003) (bankruptcy court has discretion to admit summary document over hearsay objection). The Court has reviewed the evidence and holds that Debtors' evidentiary objections do not reveal a substantial miscarriage of justice. And, according to FED. R. CIV. P. 56 and FED. R. BANKR. R. 7056, Debtors had every opportunity to pose

objections to Wilson's summary judgment evidence with their response to Wilson's motion. Therefore, this Court will not consider the evidentiary objections that the Debtors failed to raise in the Bankruptcy Court. The evidentiary objections were waived.

### 3. Wilson's Failure to Offer the Entire Contract

Debtors complain that Wilson should not have been permitted to prevail because the Bankruptcy Court did not have before it the entire Contract. They suggest, contrary to the pleadings, that Wilson's suit was in the nature of breach of contract and that he could not recover without offering the entire Contract into evidence. They claim that the entirety of the Contract would reveal that the sale of the Peseta House was "as is." They further argue that the Contract, including the Conditions Disclosure, specifically disclaimed any warranty by Debtors as sellers.

This action for fraud and violation of the DTPA neither requires admission of the entire contract nor is preempted by an "as is" sale.

> A buyer is not bound by an agreement to purchase something "as is" that he is induced to make because of a fraudulent representation or concealment of information by the seller. *Weitzel v. Barnes*, 691 S.W.2d 598, 601 (Tex. 1985); *Dallas Farm Mach. Co. v. Reaves*, 307 S.W.2d 233, 240 (Tex. 1957); see *Cockburn v. Mercantile Petroleum, Inc.*, 296 S.W.2d 316, 326 (Tex. Civ. App.—Dallas 1956, writ ref'd n.r.e.). A seller cannot have it both ways: he cannot assure the buyer of the condition of a thing to obtain the buyer's agreement to purchase "as is", and then disavow the assurance which procured the "as is" agreement. Also, a buyer is not bound by an "as is" agreement if he is entitled to inspect the condition of what is being sold but is impaired by the seller's conduct. A seller cannot obstruct an inspection for defects in his property and still insist that the buyer take it "as is." In circumstances such as these an "as is" agreement does not bar recovery against the seller.

*Prudential Ins. Co. of America v. Jefferson Associates, Ltd.*, 896 S.W.2d 156, 162 (Tex. 1995). *See also, Thermacor Process, L.P. v. BASF Corp.*, 567 F.3d 736, 743 n.6 (5th Cir. 2009).

Additionally, had Debtors felt that admission of the Contract would have been dispositive of some or all of the claims, they could have offered it themselves. There is no indication in the briefing or the record that Debtors offered the Contract in the Bankruptcy Court and that it was refused or that they complained to the Bankruptcy Court that a judgment in the absence of the Contract would be in error. This issue was thus waived. *Novack, supra.* The absence of the remaining portions of the Contract from the record does not indicate error in the judgment or support reversal.

**4. Evidence to Support Judgment Against Alonzo Ramirez**

Debtors argue that there is no evidence addressing the conduct of Alonzo Ramirez, D.E. 6, pp. 11, 16-17. In particular, they note that there was no evidence of Alonzo Ramirez's signature on a contract or on the Condition Disclosure (D.E. 3-5). While it is true that Alonzo Ramirez's signature does not appear on the Condition Disclosure offered in evidence, Wilson's Affidavit recounts that "Ramirez," defined as both Mary Ramirez and Alonzo Ramirez and referred to in the plural form, were asked about prior water damage, knew about the prior damage, yet denied it. D.E. 3-4, pp. 37-39, 55-58.

An actionable misrepresentation need not be in writing and can be a separate representation made in connection with a contract. *E.g., In re Carroll,* 464 B.R. 293, 327 (Bankr. N.D. Tex. 2011) (citing *Best v. Ryan Auto Group, Inc.*, 786 S.W. 2d 670, 671-72 (Tex. 1990) (*per curiam*)); *Mewhinney v. London Wineman, Inc.*, 339 S.W.3d 177, 181

(Tex. App.—Dallas 2011, pet. denied); *Munters Corp. v. Swissco-Young Industries, Inc.*, 100 S.W.3d 292 (Tex. App.—Houston [1st Dist.] 2002, pet. dism'd). The lack of a signature on the Conditions Disclosure does not defeat the claim. Given the content of Wilson's affidavit, it was incumbent upon Debtors to offer controverting evidence in order to avoid summary judgment. Their failure to provide such evidence or even to object to the import of Wilson's affidavit testimony waived this issue. *Novack, supra*.

5. **Evidence of the Objection to Discharge and Constructive Trust**

Debtors pose a global objection to the evidence supporting Wilson's objection to discharge under 11 U.S.C. § 523 and, while including "constructive trust" in the heading, do not articulate any complaint regarding the award of that relief. D.E. 6, p. 17. This challenge fails to apprise this Court of the particular error allegedly committed by the Bankruptcy Court. It is thus waived. *E.g., Bank One, Texas, N.A. v. Taylor*, 970 F.2d 16, 27 (5th Cir. 1992) (holding that an appellate court need not engage in a limitless review of a judgment and its evidence where the complaint is overly broad).

6. **Double Recovery**

In their last complaint, Debtors ask this Court to compare all of the repair estimates to ferret out duplications among contractors of such things as painting, window replacement, and roofing. D.E. 6, pp. 17-18. Again, there is no indication that they made these arguments in the Bankruptcy Court, thus waiving them. *Novack, supra*. Furthermore, Debtors ask for a limitless review of the record without specific complaint or guidance. Such a broad complaint fails to prosecute any error. *Bank One, supra*.

### 7. Conclusion

Debtors have failed to demonstrate that the Bankruptcy Court erred in entering the summary judgment, which found violations of the DTPA and fraud supporting non-dischargeability. The Debtors' first issue is OVERRULED.

### B. Issue Two:  Whether the Attorney's Fee Award is Excessive

In their second issue, Debtors complain of the award of attorney's fees, stating (1) they are based on hearsay, (2) they exceed the damages award (which itself was inflated) by 50%, (3) they are excessive when considering that the case was not unduly complex, (4) they should be divided and allocated among multiple defendants, and (5) they cannot include compensation for legal services devoted to unsuccessful claims.  D.E. 6, pp. 18-19.  Debtors failed to raise these objections in the Bankruptcy Court and again fail to state their appellate issue with specificity in violation of the limits of *Novack* and *Bank One*.  The issue is waived.

Debtors acknowledge that such an award is within the trial court's discretion on a case-by-case basis, considering all the evidence; and they do not articulate how that discretion was abused in this case.  They do not state what charges or amounts should not have been included in the fee award.  They complain that the case was not complex and that the fee award should be divided among multiple defendants when there are no other defendants in this case.  Such issues lack merit.

The fact that the fee award exceeds the compensatory damages is not an indication of error.  *See generally, Seabury Homes, Inc. v. Burleson*, 688 S.W.2d 712, 716 (Tex. App.—Fort Worth 1985, no writ) (refusing to find error in attorney's fees that were over

twice the DTPA total damage award and over seven times the compensatory award). Debtors have failed to supply this Court with any reason in fact or in law to find that the Bankruptcy Court abused its discretion in making its attorney fee award. The Debtors' second issue is OVERRULED.

## CONCLUSION

For the reasons set out above, the Court GRANTS the Motions to Strike (D.E. 14, 18) and STRIKES D.E. 13, 15, 16-1, and 16-2. The Court finds that oral argument would not provide any necessary benefit and the request for argument of this appeal is DENIED. The Bankruptcy Court's judgment is AFFIRMED.

ORDERED this 13th day of December, 2013.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE